JOY COSSICH LOBRANO, Judge.
11 Defendants/Appellants,■ Bonnie Irving Derbigny and Bruce Anthony Derbigny (“the Derbignys”) appeal the district court’s judgment dated. September 15, 2015 rescinding and dissolving an Act of Sale of property and transferring ownership to Plaintif^Appellee, New Orleans Redevelopment Authority (“NORA”). For the reasons that follow, the judgment of the district court is affirmed.
On August 26, 2011, the Derbignys purchased the property located at 1617 Mirabeau Avenue in New; Orleans, Louisiana (“Property”) for $65,500.00 from the Road Home Corporation. Pursuant to the terms of the Act of Sale, NORA intervened in the sale as a third-party beneficiary. The Act of Sale, as agreed to by the Road Home Corporation, NORA,, and the Der-bignys, set forth that NORA would enforce numerous post-closing compliance requirements imposed on the Derbignys. Specifically, the Act of-Sale required the Derbig-nys (1) to maintain the Property free from blight in accordance with the City of New Orleans Code of Ordinances, and (2) to achieve substantial progress toward construction of ^improvements 'or ..rehabilitation of,the Property’s existing structure within 365 days of the date of closing. The Act of Sale provided, in pertinent part, as follows:
AGREEMENT TO MAINTAIN THE PROPERTY
TJpon delivery of title, Purchaser of the Property [the Derbignys] agrees to maintain the Property in accordance with the City of New Orleans Code of Ordinances, including keeping the Property free of conditions' characteristic of blight. Maintenance of the Property shall be ongoing beginning on the date of closing. In the event Purchaser fails 'to maintain'the Property, NORA may file a cause of action" and obtain ownership of the Property. ‘ Purchaser’s failure to maintain the Property sháll cause[1] ownership to transfer to NORA, in which event all sums paid by Purchaser and any and all improvements made by Púrchaser to the Property shall be forfeited as stipulated damages. Purchaser expressly waives formal demand, notice of default, citation and ordinary legal delays, consents to summary procedure, and confesses •.judgment in favor of NORA causing title to the Property to" transfer, to NORA, Release of the right of-transfer shall not be unreasonably withheld *1196 upon satisfactory demonstration of compliance herewith.
AGREEMENT TO REPAIR OR DEVELOP THE PROPERTY
Purchaser agrees to achieve substantial progress toward construction of improvements or rehabilitation of the property’s existing structure within 365 days of the date of Closing. For purposes of this Agreement, Purchaser shall be considered to have made substantial progress if, at a minimum, it has completed foundations, pilings or other similar structural or foundational work; or in the case of rehabilitation, has commenced electrical, plumbing or other building systems repairs. All construction 'and/or rehabilitation work shall be completed in accordance with the Housing Code of New Orleans.
On November 14, 2013 and April 6, 2015, Kyle Gilmore, a post-closing compliance manager for NORA, inspected the Property. On both occasions, Gilmore found that the Property was not being improved or maintained as agreed to by the parties in the Act of Sale, and he recommended reversion of the Property title to NORA.
On April 14, 2015, NORA filed a Petition for Breach of Contract together with Rule to Show Cause, naming as defendants the Derbignys and the City of RNew Orleans (“City”), seeking to rescind and dissolve the Act of Sale, transfer the Property title from the Derbignys to NORA, and cancel and erase all delinquent taxes, interest, and fees assessed against the Property by the City.
NORA requested that the Sheriff serve the Derbignys with the petition and rule to show cause at 4023 Georgetown Drive in Metairie, Louisiana, which was the address listed for the Derbignys on the Act of Sale and on the 2015 real estate tax bill from the City. However, the Sheriff was unable to serve the Derbignys.
On July 13, 2015, NORA filed an ex parte motion for the district court to appoint a curator to appear on the -Derbig-nys’ behalf, on the grounds that the Der-bignys were absent defendants as service could not be effected. On July 25, 2015, the district court appointed a curator, attorney Judith Gainsburgh. The curator attempted to locate the Derbignys by sending certified mail to the Georgetown Drive address on August 6, 2015, and by placing an advertisement in the classified section of the Times-Picayune newspaper on August 9, 2015. Neither attempt to locate the Derbignys was successful. On August 31, 2015, the curator filed a Memorandum of No Opposition advising the district court that she had no basis upon which to object to the rule to show cause urged by NORA.
On September 11, 2015, a hearing was held before the district court, at which NORA appeared through counsel, the curator appeared on the Derbignys’ behalf, and the City made no appearance. The only witness called at the hearing was Gilmore, who testified as to his familiarity with the Act of Sale and his inspections of November 14, 2013 and April 6, 2015. Gilmore also testified that he ^performed an updated inspection on September 8, 2015, where he found that demolition had commenced’on the structure, that debris from the demolition littered the yard and structural footprint, but that there' had been no renovation. NORA introduced into evidence the entire record, which included the Act of Sale, Gilmore’s inspection reports, and the outstanding 2015 real estate tax bill from the City corresponding to the Property.
On September 15, 2015, the district court rendered judgment rescinding and dissolving the Act of Sale and transferring title to the Property to NORA free and *1197 clear of any and all taxes, liens, penalties, mortgages and other encumbrances.
The Derbignys, subsequently learned of the September 15, 2015 judgment and timely filed the instant appeal, raising assignments of error, as follows:
1. The trial court erred in appointing a curator without any facts to support the Derbignys’ alleged absentee status and by granting judgment in favor of NORA after a hearing of which the Derbignys had no adequate notice or opportunity to defend themselves; as such, the Judgment is absolutely null.
2. The trial court erred in proceeding via a summary proceeding in a breach of contract case, which must be brought as an ordinary proceeding; alternatively, even if the procedure was proper, the Act of Sale does not provide for the remedy NORA sought.
We address each of the Derbignys’ arguments individually.
First, the Derbignys contend that the district court erred as a matter of law in appointing a curator, because according to the Derbignys’ argument, they do not qualify as “absentees.” This assignment of error requires us to interpret statutes governing the appointment of a curator and defining absentee. As a general principle, the judicial interpretation of a statutory provision presents a question of law. Williams v. Par. of St. Bernard, 2010-0397, p. 3 (La.App. 4 Cir. 10/13/10), 49 So.3d 520, 523. Daigle v. Daigle, 97-1048, p. 4 (La.App. 3 Cir. 2/25/98), 710 So.2d 285, 287. “Appellate review of a question of law is simply a decision as to whether the lower court’s decision is legally correct or incorrect.” Ducote v. City of Alexandria, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118, 1120,. citing Phoe nix Assur. Co. v. Shell Oil Co., 611 So.2d 709, 712 (La.App. 4 Cir.1992).
La. C.C.P.. art. 5091 provides for the appointment of a curator to represent an absentee; the article states, in pertinent part:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
(a) A nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has not waived objection to jurisdiction ...
The article also provides:
■ C. The improper designation of the attorney appointed by the court to represent such a defendant as curator ad hoc, tutor ad hoc, special tutor, or any other title, does not affect the validity of the proceeding.
La. C.C.P. art. 5251(1), in relevant part, defines “absentee” as “a person ... whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state ...”
According to the Derbignys’ argument, NORA’s motion to appoint a curator contained no allegations of a “diligent search” to locate the Derbignys, such that the district court had no legal grounds to adjudicate the Derbignys absentees or to | ñappoint a curator. Consequently, the Derbignys contend that the judgment on appeal.was improper. We disagree.
■NORA alleged in its motion to the district court that service could not be effected upon the Derbignys and that the Derbignys qualify as absent within the meaning, of La. C.C.P. 5091. The record before us supports that service was requested, though ultimately unsuccessful, *1198 at the-address provided by the Derbignys in the Act of Sale and in the most recent real estate tax bill corresponding to the Property in litigation.[1] The Derbignys have not shown.with any record evidence supporting that their whereabouts were known to NORA or that there was no diligent effort to find or serve the Der-bignys. While the Derbignys contend in their brief that they were easily locatable via internet search and social media and that Gilmore was in possession of a cell phone number for Mrs. Derbigny, no evidence of these contentions is present in the record before us, and accordingly must be construed as mere argument of counsel. See e.g. Hous. Auth. of Neio Orleans v. King, 2012-1372, pp. 4-5 (La.App. 4 Cir. 6/12/13), 119 So.3d 839, 842. Further, the Derbignys cite to no jurisprudence identifying the allegations they claim are required, but are lacking, in NORA’s motion to appoint a curator. Nevertheless, La. C.C.P. art. 5091(C) explicitly provides that the improper designation of the attorney appointed as curator does not affect the validity of the proceeding. Thus, this assignment is without merit.
|7Second, the Derbignys argue on appeal that the September 15, 2015 judgment is an absolute nullity for three reasons: (a) because the Derbignys were never properly served; (b) because the Derbignys were not provided with adequate notice or an opportunity to defend themselves at a hearing in violation of their due process rights; and (c) because the judgment was obtained through fraud or ill practices.
Thus, the Derbignys'ask this Court, on appeal, to annul the district court judgment. However, the record before us does not reflect any nullity action brought in the district court.
La. C.C.P. art. 2006 explicitly provides that an “action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court.” Additionally, “action of nullity does not affect the right to appeal.” La. C.C.P. art. 2005. “An appeal is not a substitute for filing an action to annul.” Bridget v. Crawford, 2012-1220, p. 2 (La.App. 3 Cir. 3/6/13), 110 So.3d 665, 667, citing Lowe’s Home Const., LLC v. Lips, 2010-0762, p. 5 (La.App. 5 Cir. 1/25/11), 61 So.3d 12, 16.
“[T]he practical effect behind requiring that the defendant bring an action to annul the judgment is to permit the introduction of additional evidence.” Assensoh v. Diamond Nails, 2004-1130, p. 6 (La.App. 4 Cir. 2/16/05), 897 So.2d 806, 810, citing Decca Leasing Corp. v. Torres, 465 So.2d 910, 915 (La.App. 2 Cir.1985).
| ¡As the record on appeal contains no nullity action brought by the Derbignys in the district court, this assignment of error is not properly before this Court and we may not consider it on appeal.
Third, the Derbignys argue that the district court erred by proceeding via summary process in a breach of contract case. Consideration of this issue requires us to determine if the district court was legally correct in adjudicating this- case in a summary proceeding.
As the Supreme Court explained:
A legal error occurs when a trial court applies incorrect principles of law *1199 and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes .it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.
Snider v. Louisiana Med. Mut. Ins. Co., 2013-0579, pp. 6-7 (La.12/10/13), 130 So.3d 922, 929, citing Evans v. Lungrin, 97-0541, p. 7 (La.2/6/98), 708 So.2d 731, 735.
The Code of Civil Procedure distinguishes between ordinary proceedings and summary proceedings. Summary proceedings are. generally conducted rapidly, without the observance of all the formalities required in ordinary proceedings, and are limited to, specific proceedings. See La. C.C.P. art. 2591. The use of summary proceedings is regulated by La. C.C.P. art. 2592, which lists specific proceedings that may be brought by summary process. The Derbignys correctly point out that breach of contract is not included in that list. Nevertheless, prior to any litigation, lathe Derbignys agreed to summary procedure in the Act of Sale, which sets forth, in the event of the Derbignys’ failure to maintain the Property:
Purchaser’s failure to maintain' the Property shall cause ownership to transfer to NORA, in which event all sums paid by Purchaser and any and all improvements made by Purchaser to the Property shall be forfeited as stipulated damages. Purchaser expressly waives formal demand, notice of default, citation and ordinary legal delays, consents to summary procedure, and confesses judgment in favor of NORA causing title to the Property to transfer to NORA
(Emphasis added.)
The Derbignys cite tó no law prohibiting the parties from agreeing to summary procedure, and we find none.
Moreover, the Louisiana Code of Civil Procedure clearly provides' that a party may waive its objection to an otherwise improper use of summary procedure. La. C.C.P. art 926(A)(1) states that “[t]he objections which may be raised through the dilatory exception include but are not limited to the following ... Unauthorized use of summary proceeding.” Subsection (B) of this article further provides that “[a]ll objections which may be raised through the dilatory exception áre waived unless pleaded therein,” “[T]he defense of improper use of summary proceedings must be raised in the form of an exception in the district court, otherwise the-objection to the use of summary procedure is waived.” Howard v. Louisiana Citizens Prop. Ins. Corp., 2010-1302, p. 6 (La.App. 4 Cir. 4/27/11), 65 So.3d 697, 701, citing La. C.C.P. art. 926(B).
This Court found in Impastato v. Bruno, 503 So.2d 189, 189-90 (La.App. 4 Cir.1987), that the defendant did not properly object to the use of a summary proceeding and that “[wjhile it is true that summary proceedings should not be the Imvehicle to recover monetary damages, it is equally true that the defense of improper use of summary proceedings must be raised by dilatory exception ... ‘All objections which may be raised through the dilatory exception are waived unless pleaded.’ ” • (Internal citations omitted.)
Here, there was no objection to the use of summary procedure before thé district court. Again, summary procedure was agreed to by contract, and the objection to summary procedure was waived. This assignment lacks merit.
*1200 Fourth, and lastly, the Derbignys contend that the Act of Sale does not provide for the remedy sought by NORA, and. that NORA failed to meet its burden of proof to obtain judgment against the Derbignys.
Our review of this assignment requires the interpretation of a contract, the Act of Sale. “In the interpretation of contracts, the trial court’s interpretation of the contract is a finding of fact subject to the manifest error rule.” French Quarter Realty v. Gambel, 2005-0933, p. 3 (La.App. 4 Cir. 12/28/05), 921 So.2d 1025, 1027-28 (internal citations omitted). “In applying the manifest error rule to the trial court’s interpretation, the Court of Appeal may 'not simply substitute its own view of the evidence for the trial court’s view, nor may it disturb the trial court’s finding of fact so long as it is reasonable. Id., 2005-0933 at pp. 3-4, 921 So.2d at 1028 (internal citations omitted).[2]
| nThe Derbignys contend that the Act of Sale provides a cause of action for reversion of the Property to NORA only as a remedy for failure to maintain the Property — not for failure to rehabilitate the Property; the Derbignys claim that all testimony and evidence supports a claim for insufficient rehabilitation of the Property only. According to the Derbignys’ argument, there was insufficient proof of failure to maintain. The Derbignys further ascribe as error that the Act of Sale does not define “maintenance.” We disagree.
The Act of Sale specifically imposes two distinct post-closing obligations on' the Derbignys: (1) to maintain the Property and (2) to repair or develop the Property. *1201 The Act of Sale sets forth separate consequences for the Derbignys’ failure to abide by each of these obligations:
|1⅞... Purchaser of the Property agrees to maintain the Property in accordance with the City of New Orleans Code of Ordinances, including keeping the Property free of conditions characteristic of blight .... In the event Purchaser fails to maintain the Property, NORA may file a cause of action and obtain ownership of the Property. Purchaser’s failure to maintain the Property shall cause ownership to transfer to NORA, in which event all sums paid by Purchaser and any and all improvements made by Purchaser to the Property shall be forfeited as stipulated damages ... Purchaser ... confesses judgment in favor of NORA causing title to the Property to transfer to NORA ...
Purchaser agrees to achieve substantial progress toward construction of improvements or rehabilitation of the property’s existing structure within 365 days of the date of Closing ...
In the event Purchaser fails to achieve substantial progress on construction within the prescribed time periods, Purchaser shall pay a penalty of 25% of the Purchase Price for the Property to NORA ...
■ (Emphasis added.)
Chapter 26, Article IV of the City of New Orleans Code of Ordinances is entitled “Minimum Property Maintenance Code” and is comprised of Sections 26-146 to 26-243. These ordinances set forth requirements for the minimum maintenance of both vacant and occupied premises and procedure for determination of blight and public nuisance by the City.[3] The City ordinances also specifically address, among numerous other requirements, maintenance of the exterior of the structure, windows, doors, and disposal of debris.[4]
*1202 1iaGilmore testified at the hearing to the following observations at each of his inspections of the Property. As of the November 14, 2013 inspection, the Property was not being maintained, and no work had been performed. On April 6,2015, the structure was beginning to deteriorate. On September 8, 2015, the Property was not renovated, but demolition had commenced, and debris littered the yard and structural footprint. Gilmore’s inspection reports were admitted into evidence without .objection. Each report contained multiple photographs depicting the condition of the Property on each inspection date, reflecting the deteriorating exterior of the structure, unsecured or missing windows and doors, with debris present^ in the driveway and in front of the Property. No countervailing .evidence was introduced at the hearing. We cannot say that the district court was manifestly | uerroneously in determining- the Property had not been maintained as required by the Act of Sale and- the City of New Orleans Code of Ordinances. See La. C.C. art. 2047 (“The words of a contract must be given their generally prevailing meaning”). See La. C.C. 2046 (“When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made,in search of. the parties’ intent”). This assignment is without merit.
For the above reasons, the September 15, 2015 judgment of the district court is affirmed.
AFFIRMED

. This Court has stated:
In interpreting contracts, we are guided by the general rules contained in La. C.C. arts. 2045-2057. La. C.C. art. 2045 states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties’ intent, the court must first look to the words and provisions of the contract. Amend v. McCabe, 95-0316, p. 7.(La. 12/1/95), 664 So.2d 1183, 1187. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. When the language of. the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b), Moreover, to determine the meaning of words used in a contract, a court should give them their general prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049. The meaning and intent of the parties to a written instrument is ordinarily determined from the four comers of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. Ortego v. State, Dept. of Transp. and Development, 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. Contracts, subject to interpretation from the instrument’s four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four comers of the agreement. Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C., 2002-0536, p. 3 (La. App. 4 Cir. 7/17/02), 822 So.2d 879, 881. Therefore, each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053.
French Quarter Realty, 2005-0933 at pp. 6-8, 921 So.2d at 1029-30.

. NORA attaches to its brief a copy of a May 18, 2015 notice of administrative judgment by the City in connection with various violations of the City of New Orleans Code of Ordinances relative to the Property. This document was not introduced as evidence at the hearing before the district court, and we do not consider it, as it is not part of the record on appeal. See Denoux, 2007-2143 at p. 6, 983 So.2d at 88, citing La. C.C.P. art. 2164.

. Section 26-157 provides as follows:
All exterior property and premises shall be maintained in a clean, safe and sanitary condition, free from any accumulation of trash, litter, debris, garbage, waste, rubbish or other similar material. Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner by placing such trash in approved container(s), as provided in Chapter 138 of the Code of the City of New Orleans.
Section 26-167 provides as follows:
(a)All exterior surfaces, including but not limited to: doors, door and window frames, cornices, porches, trim, balconies, decks, and fences, shall be maintained in good condition.
(b) Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Substantial peeling, flaking and chipped paint shall be eliminated and surfaces repainted.
(c) All siding and masonry joints, as well as those between the building envelope and the perimeter of windows, doors and skylights, shall be maintained weather resistant and water tight.
(d) All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion, and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Surfaces designed for stabilization by oxidation are exempt from this requirement.
Section 26-179 provides as follows:
Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight. All glazing materials shall be maintained free from substantial cracks and holes. Every window, other than fixed windows, shall be operable and capable of being held in position by window hardware.
Section 26-181 provides as follows:
*1202 All exterior doors, door assemblies and hardware shall be maintained in good condition and all exterior doors shall lock tightly to secure the door.