Judge Madeleine M. Landrieu
| iThis appeal involves a dispute between an employee and his former employer. The disputed issues include amounts allegedly owed to the employee for compensation and vacation pay in the last year of his employment, and for attorney’s fees owed for the employer’s failure to pay all amounts owed to the employee.
Plaintiff, Charles Peuler, worked for Pratt Landry Associates, Inc. (“PLA”) from 1983 until his employment was terminated, effective June 30, 2007. PLA’s business included the sale, installation and servicing of fire alarms.[1] Mr. Peuler held various positions during his employment with PLA, but for the period of time relevant to this appeal, July 1, 2006 to June 30, 2007, Mr. Peuler was a sales representative (July 1, 2006 to January 8, 2007) and then a consultant (January 8, 2007 to June 30, 2007.)
PLA restructured its compensation plan in June 2006. The new plan became effective July 1, 2006. Mr. Peuler was provided with a copy of the compensation | splan, and signed the plan' acknowledging his approval of its contents. In accordance with the plan, Mr. Peuler’s compensation was calculated differently than for previous years, beginning with his July 2006 paychecks. After he started receiving his new salary under the plan, Mr. Peuler complained to PLA management that his compensation was not being calculated in accordance with the terms of the plan, and that he was owed more than he was being paid. He met with Amy Bodet, the chief financial officer of PLA, who explained to him how she arrived at the calculation of his wages under the plan. Ms. Bodet also sent Mr. Peuler a memorandum dated July 28,2006, explaining how she calculated his base salary.
Mr. Peuler was working as a salesperson in July 2006, and continued to work in that capacity until January 2007. A meeting was held on January 8, 2007, and was attended by Mr. Peuler, Ms. Bodet, Pratt Landry, the owner of PLA, and Jesse Schmidt, the sales manager at PLA. At this meeting, Mr. Peuler was informed that he would no longer be employed as a salesperson with PLA, but would continue to remain employed as a consultant until June 30, 2007. He was also told that his employment with PLA would terminate completely on June 30, 2007. Ms. Bodet testified that this decision was based on *460 concerns for Mr. Peuler’s safety because he was having mobility problems and had fallen several times.
Mr. Landry testified that PLA did not have consultants on its staff in January 2007, but he created the consultant position for Mr. Peuler so he could have six | minore months of income after his position as a sales representative ended. In addition to remaining on the payroll as a consultant for six months, Mr. Peuler was allowed to continue his coverage under all benefit plans and to keep his cell phone, which was paid for by PLA.[2]
Several days after this meeting, Mr. Peuler sent an email to Mr. Landry expressing his concerns as to how his pay was being calculated. He also stated in the email that he had eleven (11) weeks of unused vacation time, and he asked when he would receive his vacation pay. Mr. Peuler subsequently received a letter from PLA stating that his accrued vacation pay would be included in his paycheck. In July 2007, he returned his cell phone to the PLA office.
It is undisputed that Mr. Peuler did not perform any work for PLA for the almost six-month period that he was being paid as a consultant. He testified that he was told to stay home during that period, and there was no testimony offered by PLA to dispute Mr. Peuler’s testimony on this issue. He stated that he received only two calls from PLA employees during his time as a consultant. He said he thinks he spoke to one of the employees, but did not return the call of the other employee who contacted him. When asked at trial why he did not do so, he stated, “I figured he’d call me again.” Ms. Bodet testified that Mr. Landry, Mr. Schmidt and employees in the engineering department called Mr. Peuler while he was a consultant, and he did not respond to those calls.
LOn December 21, 2007, Mr. Peuler filed a petition for damages against PLA, alleging that PLA was indebted to him for unpaid compensation pursuant to La. R.S. 23:631, et seq., for reasonable attorney’s fees, and for damages for breach of contract. PLA filed a dilatory exception of vagueness in response to Mr. Peuler’s petition. The trial court maintained the exception and ordered Mr. Peuler to amend his petition to specify whether sums he alleges he is owed by PLA are in the nature of wages/salary, commissions, bonuses or another classification. Mr. Peuler filed a first amended petition, adding allegations that the amounts owed to him by PLA include underpayment of his salary for the second half of 2006 and pay for accrued vacation time of 416 hours. Alternatively, he alleged that he is owed his regular salary from March 30, 2007 through June 30, 2007, because he was paid for his accrued vacation time during that period instead of receiving his salary. He also asked to be awarded payment of commissions on certain specified accounts.
In a second supplemental and amended petition, Mr. Peuler alleged that PLA was arbitrary, capricious and in bad faith for allegedly underpaying him for the period when he was a salesperson from July 1, 2006 until January 8, 2007, and for refusing to compensate him for unused vacation time. He alleged that he has made repeated amicable demands on PLA for all past due wages and vacation pay, and that he is entitled to penalty wages pursuant to La. R.S. 23:632, in addition to past due wages, vacation pay and attorney’s fees. In this petition, Mr. Peuler added Mr. Pratt *461 Landry, owner of PLA, as a defendant, alleging that he assumed liability for amounts owed to Mr. Peuler when he sold PLA following Mr. Peuler’s 1 ¿termination. Mr. Peuler also alleged that PLA and Mr. Landry are indebted to him for unpaid compensation resulting from the breach of their contractual obligation to pay Mr. Peuler all amounts owed.
In their answers to Mr. Peuler’s petitions, PLA and Mr. Landry maintained that PLA has paid all sums due to Mr. Peuler under the compensation plan in effect prior to Mr. Peuler’s termination, and that they are discharged from any further obligations to him. They also alleged, and Mr. Peuler does not dispute, that Mr. Peu-ler was always an “at will” employee during his employment with PLA, and that there was never any contract of employment between Mr. Peuler and PLA.
Following trial, the trial court rendered judgment on December 1, 2015, in favor of Mr. Peuler and against PLA in the amount of $21,156.20 for unpaid wages (vacation time) and $11,250.00 for attorney’s fees plus judicial interest. The parties thereafter filed a joint motion to amend the judgment to correct the name of the defendant cast in judgment to Pratt Landry Associates, Inc. (instead of Pratt Landry <& Associates.) On December 9, 2015, the trial court rendered an amended judgment for the same amounts stated in the December 1, 2015 judgment, but which included the correct name of the defendant. Mr. Peuler appealed both judgments. PLA filed an answer to the appeal regarding attorney’s fees, and Mr. Peuler filed an answer thereto.
In his first two assignments of error, Mr. Peuler alleges error related to the trial court’s interpretation of the compensation plan’s provisions for the calculation of wages. He argues that the plan was ambiguous, and therefore should have been 1 (¡interpreted against PLA because Mr. Schmidt and Mr. Landry drafted the plan. He also argues that he should have been awarded an additional $55,769.24 in wages for the second half of 2006.
The section of the compensation plan entitled “Sales Personnel” states as follows:
The sales representative’s income is based on two components, salary and commission.
Salary is adjusted on July 1 and January 1 each year based on 4.6% of a salesperson’s booked sales volume for the previous 6 months. A job is considered “booked” when: 1) the job quote has been approved by the senior estimator and sales manager; and 2) the job has been placed on PLA’s books through a binding signed customer purchase order.
Example: A sales rep has $950,000 in booked sales vaVume on the last day of the )ialf fiscal year. Starting the first pay period of the following half fiscal year, the sales rep’s annual salary is set at $87,^00 for six months. ($950,000 x 16% = $87,m) or $7,288.33/month. (emphasis in original.)
The section of the plan entitled “Termination of Employment” includes the following portion:
The new compensation changes will not go into effect until the end of the 1st half of the 2006-2007 fiscal year (July 1, 2006). This allows 3 months to ramp up sales. This is being done at an expense to PLA so every effort should be made to maximize the benefits and avoid unnecessary additional costs. Your initial salary on July 1, 2006 when this plan is implemented will be based on the sales you book between October 1, 2005 and June 30, 2006. For jobs booked prior to July 1, 2006 you will be paid commis *462 sions of 2.4% 30 days after PLA is paid for said jobs.
At trial, Ms. Bodet testified as to how she calculated Mr. Peuler’s wages for the second half of 2006 pursuant to the “Sales Personnel” section of the compensation plan. She utilized his booked sales from the previous twelve months 17(from July 1, 2005 to June 30, 2006), $2,502,647.86, and multiplied that amount by 4.6% to arrive at his annual base salary of $115,121.80, or $4,427.76 for each of the 26 pay periods in a one-year period. The plan is silent as to how often a sales representative is paid, but Ms. Bodet testified that they áre paid biweekly, for a total of 26 pay periods in a year. While conceding that the mathematical example in the “Sales Personnel” section of the plan is incorrect, Ms. Bodet stated that she used twelve months of sales data to calculate Mr. Peuler’s salary for the last half of 2006 because that section of the plan refers to a sales representative’s “annual” salary. Mr. Peuler was paid $4,427.76 for each of the 13 pay periods for the six-month period from July 1, 2006 to December 31, 2006.[3]
For the first half of 2007, Ms. Bodet calculated Mr. Peuler’s wages by multiplying his booked sales from the last six months of 2006 ($1,149,789.34) by 4.6%, for a total of $52,890.31. She divided that amount by 13, and paid Mr. Peuler $4,068.49 for the 13 pay periods in the first half of 2007. She said that when she calculated Mr. Peuler’s wages for the second half of 2006, she divided the total figure (booked sales x 4.6%) by 26 because she used twelve months of booked sales to arrive at an annual salary amount. Ms. Bodet acknowledged that she incorrectly calculated Mr. Peuler’s salary for the first half of 2007, and should have divided the total amount by 26 instead of 13. However, she testified that the result of her miscalculation for the first half of 2007 was that Mr. Peuler received 1 «twice as much in salary during that period than the amount to which he was entitled.
Mr. Peuler argues that Ms. Bodet incorrectly based his salary calculation for the second half of 2006 on his previous twelve months of sales, and should have instead used the previous nine months of booked sales (as per the above-quoted language in the “Termination of Employment” section of the plan.) He also argues that she should have divided his base salary for 2006 by 13 (as Ms. Bodet did for the first half of 2007) instead of by 26.
“When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. In the interpretation of a written instrument, extrinsic evidence is proper only where the instrument is ambiguous after examination of its four corners. French Quarter Realty v. Gambel, 2005-0933, p. 7 (La.App. 4 Cir. 12/28/05), 921 So.2d 1025, 1030. “If, after examining the four corners of a contract, the contract is ambiguous, the agreement shall be construed according to the intent of the parties, which is to be inferred from all of the surrounding circumstances.” New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey, 2009-1433, p. 10 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 401.
The determination of whether a contract is clear or ambiguous is a ques *463 tion of law. Landis Const. Co., L.L.C. v. St. Bernard Parish, 2014-0096, p. 5 (La.App. 4 Cir. 10/22/14), 161 So.3d 969, 963. Ambiguities of an agreement are construed against the drafter of the agreement. Robinson v. Robinson, 1999-3097, p. 18 (La. 1/17/01), 778 So.2d 1105, 1122. “Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown.” New Orleans Jazz and Heritage Foundation, Inc, 2009-1433, p. 9, 40 So.3d at 401, quoting Clinkscales v. Columns Rehabilitation and Retirement Center, 2008-1312, p. 3 (La.App. 3 Cir. 4/01/09), 6 So.3d 1033, 1035-1036.
While Mr. Peuler argues that the trial court erred in not finding the plan ambiguous, it is clear from the reasons for judgment that the trial court did find the plan ambiguous, even though the word “ambiguous” is not in the reasons. The trial court also obviously believed that extrinsic evidence was necessary to determine the parties’ intent with regard to the compensation plan. We agree with the trial court’s apparent finding that the compensation plan was ambiguous and required extrinsic evidence to determine the parties’ intent. The trial court relied on the testimony of Ms. Bodet and Mr. Landry to determine how Mr. Peuler’s wages were calculated for the second half of 2006 and whether those calculations were properly made in accordance with the compensation plan.
The trial court found that Mr. Peuler received the proper amount of wages for the second half of 2006, and found no merit to his argument that he is entitled to additional wages for that period. The court noted that while the example in the “Sales Personnel” section of the plan was mathematically incorrect, the meetings held subsequent to the implementation of the plan established that Mr. Peuler understood that his wages for the second half of 2006 were based on an annual |insalary of $115,121.80. The trial court noted that the plan provided for an annual salary adjustment every six months based upon the preceding six months of booked sales. Ms. Bodet testified that she explained to Mr. Peuler how his salary was being calculated under the new plan for the second half of 2006, and he made no further complaints and accepted the salary. Although Mr. Peuler relies on the section of the plan, which stated that nine months of previous sales were to be considered for “your initial salary on July 1, 2006,” there is no further explanation as to calculations in that section. While the example used in the section setting forth the calculation for a sales representative’s salary included a mathematical error, it stated that the calculation was for “the sales rep’s annual salary, and that is why Ms. Bodet used twelve months of sales data to calculate Mr. Peuler’s salary for the last half of 2006. (Emphasis ours.)
During Ms. Bodet’s testimony at trial, she was questioned regarding certain inconsistencies between her deposition testimony and her trial testimony. After hearing the testimony at trial, the trial court found that Ms. Bodet and Mr. Landry were credible witnesses, and that Mr. Peu-ler’s wages for the second half of 2006 were properly calculated. Because the trial court’s credibility determinations were reasonable, we find no error in her factual finding that Mr. Peuler is not entitled to additional wages for the second half of 2006.
Mr. Peuler next argues that the trial court erred in not awarding statutory penalty wages to him in accordance with La. R.S. 23:632. Mr. Peuler’s argument that he is entitled to statutory penalty wages is based on his contention that PLA I ¶ Jailed, without good cause, to pay the amount of wages he is owed for the second *464 half of 2006. As stated above, we find no merit in that argument. However, Mr. Peuler additionally argues that penalty wages are owed to him because PLA failed to compensate him for vacation pay. The trial court found that PLA owes Mr. Peu-ler $21,156.20 in unpaid wages, which amount represents his accrued vacation pay.
This suit for unpaid compensation was filed pursuant to La. R.S. 23:631. Section D of that statute states the following regarding vacation pay:
(1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of ■ the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually-earned by an employee pursuant to the employer’s policy.
La. R.S. 23:632, the statute addressing penalty wages, states:
A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily, rate of pay, or else for full wages- from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
|1RB. When the court finds that an employer’s dispute over the amount of ■ wages due was in good faith, but the employer is subsequently found by the court to owe the amount in - dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer’s failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, -in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
“In order to recover penalty wages and attorney’s fees under La. R.S. 23:632, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand.” Becht v. Morgan Bldg. & Spas, Inc., 2002-2047, p. 4 (La. 4/23/03), 843 So.2d 1109, 1112; “When a defendant denies liability after suit is filed, technical deficiencies in a pre-suit demand' are waived by him and will not defeat the imposition of statutory penalties designed to enforce prompt payment,” Carriers v. Pee Wee’s Equipment Co., 364 So.2d 555, 657 (La. 1978.)
“Penalties should not be imposed on the employer when it presents a good faith non-arbitrary defense to its lia *465 bility for unpaid wages.” Saacks v. Mohawk Carpet Corp., 2003-0386, p. 16 (La.App. 4 Cir. 8/20/03), 856 So.2d 359, 370. “A trial court’s determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject 11sto the manifest error standard of review.” Jeansonne v. Schmolke, 2009-1467, p. 18 (La.App. 4 Cir. 5/19/10), 40 So.3d 347, 361, citing Loup v. Louisiana State School for the Deaf, 1998-0329, p. 6 (La.App. 1 Cir. 2/19/99), 729 So.2d 689, 693.
Ms. Bodet testified that at the beginning of 2007, Mr. Peuler had accrued 416 hours of vacation time, but in 2007, he would have only been entitled to use 300 hours, which is the maximum amount of accrued vacation time an employee was allowed to use in a one-year period. It is undisputed that Mr. Peuler did not use any of his vacation time in 2007, but he testified that he requested to be paid for his unused accrued vacation time. After his position at PLA changed to that of consultant, Mr. Peuler did not accrue any additional vacation time. He received a letter from PLA saying his accrued vacation pay would be included in his paycheck. Mr. Peuler testified that he neither agreed to nor requested this action.
The dispute over Mr. Peuler’s vacation pay arises from the fact that PLA did not pay him for his vacation time in addition to his salary, but instead paid him for his accrued vacation time as part of his salary. As noted above, Mr. Peuler’s employment with PLA was terminated effective June 30, 2007. Ms. Bodet testified that Mr. Peu-ler received payment for all 416 hours of his accrued vacation time as part of his salary in 2007, even though she contends that he was only owed payment for the company’s annual maximum of 300 hours of vacation time. When asked at trial why she paid Mr. Peuler for more vacation time than he was entitled to receive, she answered, “I just wiped out the accrual. It was still his salary.”
I uThe trial court found that Mr. Peuler is not entitled to penalty wages under La. R.S. 23:632 for the failure of PLA to pay him for his accrued vacation time. While finding that PLA should not have included Mr. Peuler’s unused vacation time as part of his salary, the court noted that it was undisputed that Mr. Peuler failed to perform any services for PLA after becoming a consultant in January 2007. The court also stated that her finding that the calculation of wages for the second half of 2006 was proper supports a finding that a genuine dispute existed between the parties as to whether PLA owed Mr. Peuler any amounts other than those already paid. The trial court declined to award penalty wages after finding that the testimony showed that there was a good faith dispute as to the amount of vacation pay owed to Mr. Peuler.
PLA should not have made the unilateral decision to use amounts earned by Mr. Peuler in accrued vacation pay as part of his salary during his time as a consultant. However, the record shows that this mistake was made in good faith, especially given the fact that Mr. Peuler did not perform any work for PLA after his position was changed from salesperson to consultant. We find no error in the trial court’s decision declining to award penalty wages pursuant to La. R.S. 23:632.
In his next assignment of error, Mr. Peuler argues that the trial court abused its discretion in its award of attorney’s fees. The trial court awarded Mr. Peuler attorney’s fees in the amount of $11,250.00. Counsel for Mr. Peuler argues that this award should be increased, noting that he spent over 180 hours litigating this case.
*466 11fi“Even if penalty wages are not due, reasonable attorney’s fees are to be awarded for a well-founded suit for any unpaid wages.” Saacks, 2003-0386, p. 18, 855 So.2d at 371. “Unlike penalty wages, courts do not permit equitable defenses to the award of attorney’s fees in the event that a ‘well-founded suit’ for wages is filed.” Id. “The suit is considered ‘well-founded’ and an award of attorney’s fees is mandatory where the employee brings a successful suit and recovers unpaid wages.” Id. “Factors to be considered in determining the reasonableness of attorney’s fees include the following: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge.” Id. (citations omitted.)
In setting the award of attorney’s fees at $11,250.00 instead of $37,000.00 as suggested by counsel for Mr. Peuler, the trial court stated that while counsel’s hourly rate of $375.00 is reasonable given the skill and time expended on this case, an award of $37,000.00 in attorney’s fees would be excessive given the fact that Mr. Peuler was only found to be entitled to an award of $21,156.20 in unpaid wages. The trial court found that an award of $11,250.00 in attorney’s fees is reasonable in this case. We find no error.
In his final assignment of error, Mr. Peuler argues that the trial court erred in failing to find that Mr. Landry is personally hable for Mr. Peuler’s claim for | ifiunpaid compensation. At trial, Mr. Landry testified that he sold PLA to Detection Logic Incorporated after Mr. Peuler’s employment was terminated. When asked if he assumed personal liability for Mr. Peu-ler’s wage claim in that sales agreement, Mr. Landry replied that he did. The sales agreement between PLA and Detection Logic Incorporated is not in the record, so we cannot determine the details of that agreement. Based on the record before us, we cannot say the trial court erred in not finding Mr. Landry personally liable for Mr. Peuler’s wage claim.
PLA answered Mr. Peuler’s appeal, arguing that the trial court erred in finding that Mr. Peuler was entitled to an award for vacation pay, or alternatively, if an award is due, it should be limited to PLA’s maximum amount of 7.5 weeks, or 300 hours, of vacation time. Based on this argument, PLA further argues that Mr. Peuler is not entitled to attorney’s fees pursuant to La. R.S. 23:632. As stated above, we find no error in the trial court’s award of $21,156.20 in vacation pay. PLA was willing to pay Mr. Peuler for all 416 hours of his accrued vacation time when it incorrectly paid him for vacation time instead of salary while he was employed as a consultant. The trial court did not limit Mr. Peuler’s award of vacation pay to 300 hours, and we find no error in that decision. Also, as stated above, we find no error in the trial court’s award of $11,250.00 in attorney’s fees for PLA’s failure to pay Mr. Peuler for his accrued vacation time. Accordingly, we find no merit in PLA’s cross-appeal.
117Finally, Mr. Peuler filed an answer to PLA’s cross-appeal, requesting additional attorney’s fees for defending against the cross-appeal.[4] After this appeal was lodged, this Court granted Mr. Peu-ler’s motion to supplement the record with *467 his counsel’s affidavit and time sheets relating to the litigation of this appeal. Based on counsel’s affidavit and time sheets, Mr. Peuler asks that he be awarded a total of $40,200.00 in attorney’s fees for defending this appeal. PLA opposed Mr. Peuler’s request for additional attorney’s fees for defending this appeal, and alternatively requested that any amount awarded be substantially less than that requested by Mr. Peuler.
“An increase in attorney’s fees should be awarded to a party who has already been awarded attorney’s fees by the trial court and then successfully defends an appeal.” Saacks, 2003-0386, p. 25, 855 So.2d at 375. We find that Mr. Peuler is entitled to additional attorney’s fees for successfully defending PLA’s cross-appeal. However, we do not find the amount requested by Mr. Peuler for this award to be reasonable. Considering the factors to be considered in determining the reasonableness of attorney’s fees, as set forth above in the argument regarding penalty wages, we find that $2,500.00 is a reasonable award for attorney’s fees for the defense of this appeal. We amend the award of attorney’s fees to include an additional $2,500.00 for the defense of this appeal, for a total of $13,750.00 to be awarded to Mr. Peuler in attorney’s fees.
|1sFor the reasons stated above, the trial court judgment is amended to increase the award of attorney’s fees to $13,750.00. In all other respects, the trial court judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED

. The owner of PLA sold the business subsequent to the termination of Mr. Peuler’s employment.

. Mr, Peuler's salary for the first six months of 2007 differed from what he was paid for the last six months of 2006, The details as to how his salary was calculated for those two periods are included below in the discussion of Mr. Peuler's first two assignments of error.

. Ms. Bodet acknowledged that Mr. Peuler's first paycheck in July 2006 was less than he was owed because she used figures calculated by Mr. Schmidt for that check. When she made her own calculations based on more specific sales information, the second check paid to Mr. Peuler in July was for $4,427.76, plus the additional amount he should have been paid in his first check.

. In earlier portions of this opinion, we have found that Mr. Peuler was not entitled to the other items requested in his answer to PLA’s cross-appeal.