| JUSTIN H. MOORE | * | NO. 2021-CA-0021 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CENTRALIZED | * | |
| MANAGEMENT SERVICES, | | FOURTH CIRCUIT |
| LLC AND EPISODE | * | |
| SOLUTIONS, LLC | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-01077, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Daniel L. Dysart, Judge Paula A. Brown)

DAVID P. VICKNAIR
HOPE E. HUGHES
SCOTT VICKNAIR, LLC
909 Poydras Street, Suite 1100
New Orleans, Louisiana 70112
-and-
ANDRE F. TOCE
THE TOCE FIRM, APLC
969 Coolidge Blvd.
Lafayette, Louisiana 70503
     COUNSEL FOR PLAINTIFF/APPELLANT

JEFFREY E. RICHARDSON
LAUREN T. TAFARO
ADRIENNE C. MAY
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
     COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**AUGUST 4, 2021**

Plaintiff, Justin H. Moore (Moore), appeals the trial court's judgment, dismissing Moore's petition for unpaid wages in favor of defendant, Centralized Management Services, LLC and Episode Solutions, LLC (collectively, CMS). For the reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Moore began working for CMS on August 28, 2017, as a medical device sales representative. The initial offer of employment letter provided on August 2, 2017, did not include any up-front bonuses or guaranteed commissions. In a follow-up email to CMS, Moore expressed his concern regarding the lack of guaranteed commissions. The parties acknowledge that these bonuses are common practice in the medical device sales industry. Ultimately, CMS provided Moore with an amended employment offer letter, which included the following bonus structure:

> You will be given a guarantee bonus of a $12,000 to be paid after the 1st 30 days and included in your monthly pay. You will be given a guarantee bonus of $12,000 to be paid after 60 days of employment and will be included in your monthly pay. You will be given a guarantee bonus of $12,000 to be paid after the first 90 days of employment and will be included in your monthly pay. After the fourth month of employment you will be given a $12,000 draw ($8.7K is the base comp and the difference is the draw). It will be reconciled in your quarterly review.

1

You will be eligible to participate in the company sponsored benefits beginning August 28th.[1]

Moore accepted the conditions of employment and began work on August 28, 2017. Email correspondence between Moore and CMS representatives reflect the following:

- On September 26, 2017, Moore notified Angela Jones (Jones), his supervisor, and Vail Willis (Willis), Chief Operating Officer for CMS, that he was a recovering alcoholic, was in active recovery, had a relapse, and was taking the proper action. Moore noted that he was disclosing this information on the advice of Katie Schram (Schram), Human Resource director for CMS.

- On September 27, 2017, Moore notified Hutton Eadie (Eadie), Director of Compliance and Legal Affairs for CMS, that he had checked into a treatment facility, where he would have no phone access and limited internet access.

- On October 10, 2017, Moore informed Eadie that in September 2017, he took off Thursday and Friday, September 21 and 22, and Monday, September 25 through Friday, September 29. He explained that he worked the entire month of September besides those seven days.

Moore was released from the treatment facility on Friday, October 27, 2017. CMS terminated his employment on November 1, 2017. Moore's request for the guaranteed bonuses set forth in the employment offer letter was denied. Responding to Moore's inquiry regarding his bonuses, Eadie explained to Moore, in a November 6, 2017 letter, that "your work time with the company did not qualify you for a bonus. The Bonus payment was conditioned on you working 30 days for the company. According to our records, you did not work 30 days and therefore are not entitled to the payment."

On February 3, 2020, Moore filed a petition for unpaid wages against CMS

---

[1] Moore's start date was initially August 21, 2017. It was changed to August 28, 2017, in the amended employment letter.

pursuant to Louisiana's Wage Payment Act, La. R.S. 23:631 *et seq.*[2] The petition asserts that Moore was entitled to $24,000.00 in guaranteed bonuses under the contract, representing the $12,000.00 bonus after 30 days of employment and the $12,000.00 bonus after 60 days of employment. Finally, the petition avers that the refusal to pay the earned unpaid wages was arbitrary and capricious, thus entitling Moore to penalties and attorney's fees under La. R.S. 23:632.[3]

The matter was brought to trial on September 9, 2020. Moore testified that he was still "working" for CMS while in the treatment facility. He acknowledged, however, that he had no telephone access and only limited internet access for emergencies.

Moore stated that when he got out of the treatment facility on October 27, 2017, he informed Eadie that he was ready to return to work. Eadie advised him

---

[2] La. R.S. 23:631(A)(1)(a) provides:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

[3] La. R.S. 23:632 provides:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
>
> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
>
> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

not to speak to any of the physicians in the market until he spoke with Jones. Moore met with Jones on Wednesday, November 1, 2017, at which time, he was terminated without reason. Moore further testified that after the meeting, Willis and Schram told him, for the first time, that there were "performance issues" with his employment.[4]

Eadie testified that September 20, 2017, was the last day Moore worked for CMS. He explained that although Moore was officially terminated on November 1, 2017, he was on unpaid leave after September 20, 2017. Eadie verified the company's payroll records reflecting that Moore received regular salary payments from August 28, 2017, through September 20, 2017. Eadie explained that Moore was denied the guaranteed bonuses because he worked less than 30 days for CMS. On cross-examination, Eadie testified that CMS approved Moore going into rehabilitation. He opined that it was more appropriate to terminate him in person and that CMS did not have an opportunity to terminate him before he left.

At the conclusion of trial, the following reasons were provided from the bench:

> [G]oing through the testimony as outlined by Mr. Moore himself, there was not an initial 30 days of employment. The 30 days of work from August 28th through September 20th, which was not only outlined in the exhibits that have been properly admitted into evidence, but also Mr. Moore's testimony, does not equate to the minimum of the 30 days.

Judgment was rendered September 21, 2020, denying Moore's claim for unpaid wages and dismissing his petition with prejudice. Moore's timely appeal followed.

---

[4] The reason for termination was not a part of the state court litigation. That issue was raised in a separate federal court proceeding.

4

**LAW AND ANALYSIS**

On appeal, Moore asserts that the trial court erred in: 1) failing to apply the clear and unambiguous language of the employment contract, or in the alternative, erred by failing to construe any ambiguous terms against CMS; and 2) failing to award unpaid wages, penalties, attorney's fees and judicial interest pursuant to Louisiana's Wage Payment Act, La. R.S. 23:631, *et seq*.

***Assignment of Error No. 1. Interpretation of the Contract.***

Moore maintains that he was employed from August 28, 2017, until his termination on November 1, 2017, for a total of 60 days. He argues that considering the trial testimony and the clear and unambiguous language of the employment contract, he is entitled to $24,000.00 in guaranteed bonuses. Moore further argues that the lower court erred in confusing the terms "worked" and "employed," when finding that Moore did not work a full thirty days. Moore submits that the plain reading of the employment contract demonstrates that he was guaranteed bonuses for the days in which he was "employed."

In support of this argument, Moore relies on the definition of "employment" found in Black's Law Dictionary, as "the quality, state, or condition of being employed; the condition of having a paying job." He asserts that the plain language in the employment contract does not contemplate the days "worked." As such, Moore contends that the trial court erred in considering the days worked rather than the days employed. We disagree.

As CMS correctly points out, the definition of employment in Black's Law Dictionary also includes "[w]ork for which one has been hired and is being paid by an employer." Moreover, trial testimony confirmed that Moore's relapse forced him to miss work from September 21, 2017 through September 27, 2021. Thus,

the evidence confirms that Moore only worked twenty-three days for CMS before entering the treatment facility.

Regarding Moore's argument that he continued to work while at the treatment facility, the trial court determined:

> You mentioned in your cross-examination, Mr. Moore, that just because - - you know, your job was a 24/7, and that just because you were not there, does not mean that you were not performing work. I think it's clear that with the inpatient treatment, in the e-mail correspondence that you provided to and from the company, that you were not continuing to work, and I think to suggest otherwise would undermine your credibility of your testimony.

The evidence presented at trial clearly reveals that Moore produced no work after September 20, 2021. Moore argues however that the plain and unambiguous language of the contract only required that he be "employed" for a certain length of time in order to be entitled to the bonuses. We find no merit in this argument.

"Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050.

In *Eckstein v. Becnel*, 2017-0868, pp. 8-9 (La. App. 4 Cir. 6/27/18), 250 So.3d 1046, 1053, this Court explained the standard of review in contract interpretation as follows:

> A dispute arising out of whether or not the language of a contract is ambiguous is an issue of law subject to *de novo* review. *See Orleans Parish School Board v. City of New Orleans*, 1996-2664, p. 4 (La. App. 4 Cir. 9/3/97), 700 So.2d 870, 873. However, "[i]n the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." *French Quarter Realty v. Gambel*, 2005-0933, p. 3 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1028 (quoting *Grabert v. Greco*, 1995-1781, p. 4 (La. App. 4 Cir. 2/29/96), 670 So.2d 571, 573)). In

6

applying the manifest error review standard to the district court's interpretation of the contract, the appellate court may not substitute its own view of the evidence for the district court's view or disturb the district court's fact findings so long as its findings are reasonable. *Gambel*, 2005-0933, p. 3, 921 So.2d at 1028.

Based on our *de novo* review of the record, we find, as did the trial court, that the contract of employment was clear and unambiguous. It is evident that Moore was expected to perform work in order to be entitled to the bonuses. Pursuant to Moore's own testimony, the up-front bonuses were necessary to give him time to grow the business and develop relationships with the doctors in the marketplace. Clearly, growing the business would necessitate work on Moore's part. The trial court determined that Moore worked less than 30 days for CMS and, therefore, was not entitled to any of the guaranteed bonuses. That factual finding is supported by the record. Thus, the trial court's ruling in this regard was not clearly wrong.

### Assignment of Error No. 2. Penalties for Unpaid Wages.

La. R.S. 23:632 provides for the assessment of penalties and attorney's fees against an employer for failure to comply with the provisions of La. R.S. 23:631 pertaining to payment of wages due at the time of termination of employment. *See, Calamia v. Core Laboratories, LP,* 2017-0635, p. 14 (La. App. 5 Cir. 5/30/18), 249 So. 3d 1038, 1047-48.

In order to recover penalty wages under La. R.S. 23:632, a claimant has the burden of establishing the following three factors: (1) that wages were due and owing; (2) that demand for payment was made where the employee was customarily paid; and (3) that the employer did not pay upon demand. *Rodriguez v. Green*, 2012-0098, p. 6 (La. App. 4 Cir. 6/20/12), 111 So.3d 1, 5 (internal citations omitted).

7

In the present case, having determined from the evidence and testimony that Moore was not owed any unpaid wages, we therefore conclude that the trial court did not err in failing to award penalty wages or attorney's fees pursuant to La. R.S. 23:632. This assignment of error is without merit.

**CONCLUSION**

Considering the particular facts of the instant case, we find no error in the trial court's judgment denying Moore's claim for unpaid wages and dismissing his petition with prejudice. Accordingly, we affirm.

**AFFIRMED**