921 So.2d 1025 (2005)
FRENCH QUARTER REALTY
v.
Gregory R. GAMBEL.
No. 2005-CA-0933.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 2005.
*1026 Tim L. Fields, New Orleans, LA, for Plaintiff/Appellee, French Quarter Realty.
Thomas J. Wagner, Wagner & Bagot, LLP, New Orleans, LA, for Defendant/Appellant, Gregory F. Gambel.
(Court Composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.)
TOBIAS, Judge.
The defendant, Gregory R. Gambel ("Gambel"), suspensively appeals the judgment of eviction rendered against him on 26 April 2005. For the reasons assigned, we affirm the judgment of the trial court.
On 6 January 2005, Gambel contracted with French Quarter Realty ("FQR") as agent for the landlord, Thomas Landry, to lease an apartment located at 1140 Decatur Street, Apartment # 3, in New Orleans, Louisiana. Mr. Gambel paid $1,600.00 in rent for the months of January, February and March.[1]
On 5 April 2005, Gambel was informed by FQR that the April rent was late and that he had until 8 April 2005 to pay the rent. On 11 April 2005, FQR instituted this eviction proceeding. The parties appeared in court for the rule on eviction on 19 April 2005.
Gambel testified that on 11 April 2005, he made an on-line request to his bank, Gulf Coast Bank and Trust ("Gulf Coast"), to have a payment sent to FQR for the *1027 April rent. His bank records verified that $1,600.00 was deducted from his bank account on 11 April 2005. Gambel submitted an affidavit from Leslie Callahan of Gulf Coast stating that the check was mailed to FQR; however, FQR denied receiving the check. The trial court continued the hearing so that the parties might resolve the issue of the missing check.
The parties again appeared in court on 26 April 2005. At that time, Gambel informed the court that he filed an exception of improper service and raised an affirmative defense asserting that the service was unconstitutional. Evidence was presented at trial that on 13 April 2005, the Constable of First City Court notified Gambel of the eviction proceeding by tacking the citation to the door of the leased premises in accordance with La. C.C.P. art. 4703. Gambel specifically denied receiving the tacked service. Evidence was also presented that the Constable mailed a notice of the proceedings to Gambel. Gambel admitted to receiving the mailed notice on 14 April 2005. The trial court denied the exception of improper service and denied Gambel's request to brief the constitutional issue.
After hearing testimony from a representative of FQR that the April rent check was never received and that FQR declined to accept a replacement check offered by Gambel in court that day, the order for eviction was granted. Gambel's suspensive appeal was filed the same day.[2] The record further reflects that Gambel deposited the April rent into the registry of the court.
On appeal, Gambel assigns two errors: First, the trial court erred in denying the exception of improper service and summarily rejecting his constitutional challenge to the service. Second, the trial court erred in its interpretation of the ambiguous and contradictory terms of the lease and in failing to hold that he satisfied his payment obligation under the lease.
We apply the manifest error/clearly wrong standard of review to an appeal of an exception with contested issues of fact. Chesne v. Mayeaux, XXXX-XXXX, p. 6 (La.App. 3 Cir. 11/5/03), 865 So.2d 766, 770. With respect to issues of law, however, the standard of review of an appellate court is whether the court's interpretative decision is legally correct. Glass v. Alton Ochsner Medical Foundation, XXXX-XXXX, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405.
In a case involving contract interpretation, this court, in Genghis Kahn, Inc. v. Formosa Hotel, Inc., XXXX-XXXX, p. 4 (La.App.Cir.6/02/04), 876 So.2d 923, 925, quoting Simpson v. Pep Boys-Manny Moe & Jack, Inc., XXXX-XXXX, pp. 3-4 (La.App. 4 Cir. 4/10/03), 847 So.2d 617, 621, stated:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation *1028 of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct. Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc., XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 697-698, quoting Bartlett Construction Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94.
Mr. Gambel's initial contention on appeal is that the trial court erred in failing to find that the tacked service made pursuant to La. C.C.P. art. 4703 was improper and unconstitutional. Article 4703 reads:
"If the premises are abandoned or closed, or if the whereabouts of the lessee or occupant is unknown, all notices, process, pleadings, and orders required to be delivered or served on the lessee or occupant ... may be attached to a door of the premises, and this shall have the same effect as delivery to, or personal service, on, the lessee or occupant."
In Ernest Joubert Co. v. Tatum, 332 So.2d 553 (La.App. 4 Cir.1976), this court held that the "tacking" procedure was constitutional and not violative of the tenant's due process rights, and further stated that whether such service can be used by a lessor is a factual question to be determined by the trial court. The court explained, "[T]his is a special procedure involving the possession of specific premises which is only authorized under conditions where it seems to be the only practical or workable method of effecting service. By the procedure, the tenant is not subjected personally to the jurisdiction of the court, but only his right to possession of those premises is involved." Id. at 554.
Furthermore, it is well established in the jurisprudence that article 4703 authorizes tacking if the whereabouts of the lessee or occupant is unknown, and that it does not impose the same stringent condition of La. C.C.P. art. 5251(1) which defines an absentee as one "who cannot be found and served after a diligent effort." Alaimo v. Hepinstall, 377 So.2d 889, 890 (La.App. 4 Cir.1979). As stated in Fairfield Property Management Stone Vista Apartments v. Evans, 589 So.2d 83, 85 (La.App. 2 Cir.1991), a process server need not conduct an exhaustive search or make multiple attempts to locate a lessee in order for proper service by tacking. Rather, a landlord must satisfy the trial judge that the tacking was proper under the circumstances. Alaimo, 377 So.2d at 890.
In support of the argument that the tacked service was unconstitutional, Gambel cites Greene v. Lindsey, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), where the Supreme Court invalidated a "tacking" procedure used in eviction proceedings in Kentucky. In Greene, residents of a public housing project had default judgments of eviction rendered against them when service of the notice of the proceedings was tacked. The residents claimed they did not receive the tacked notices and did not learn of the eviction proceedings until default judgments were rendered and their appeal delays had run. Process servers in Greene presented undisputed testimony that notices were frequently removed from apartment *1029 doors by children and other tenants who resided in the housing project.
In the present case, Gambel denied receiving the tacked service; however, he presented no evidence to establish that the Constable's return was in error. Furthermore, unlike Greene, Gambel admitted to receiving a mailed notice of the eviction proceeding prior to the hearing. He participated in the hearing as originally scheduled. Thus, he was fully aware of the legal proceedings against him. Additionally, the trial court's continuance of the matter afforded Gambel an opportunity to file any legal challenges to the proceeding. We find the facts in the case at bar distinguishable from Greene. Under the circumstances presented, we find Mr. Gambel's constitutional rights of due process and fundamental fairness have not been violated. Accordingly, we find no error in the trial court's denial of the exception of improper service and refusing to permit him to brief the constitutional issue.
In his second assignment of error, Gambel submits that the trial court erred in interpreting the lease to find that the April rent was delinquent. The provision of the lease regarding Mr. Gambel's rent obligation reads, in pertinent part, as follows:
RENT This lease is made for and in consideration of a monthly rental of $1,600.00 dollars per month payable in advance on or before the 1st day of each month.... If the rent is paid by the 5th of the month, Lessee shall be entitled to a deduction of $100.00 dollars per month, or a net rental of $1,500.00 dollars per month; provided however that any monthly rental payment not received by the 1st of the month shall be considered delinquent.
Gambel asserts that the lease does not require that the rent be paid by the first of the month. Instead, he argues that the lease specifically authorizes him to make delinquent discounted payments of $1,500.00 through the fifth of the month, and that his obligation after the fifth is to pay the full amount of $1,600.00.
In opposition, FQR maintains that the lease clearly specified that rent was due on or before the first of the month, and the fact that the lease offered a $100.00 rent discount for payment by the fifth of the month did not alter the clear terms of the lease that any payment made after the first of the month would be considered delinquent.
In interpreting contracts, we are guided by the general rules contained in La. C.C. arts.2045-2057. La. C.C. art. 2045 states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties' intent, the court must first look to the words and provisions of the contract. Amend v. McCabe, 95-0316, p. 7 (La.12/1/95), 664 So.2d 1183, 1187. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b). Moreover, to determine the meaning of words used in a contract, a court should give them their general prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049. The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the *1030 instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. Ortego v. State, Dept. of Transp. and Development, 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C., XXXX-XXXX, p. 3 (La.App. 4 Cir. 7/17/02), 822 So.2d 879, 881. Therefore, each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053.
In the present case, we find that the clear and unambiguous language of the lease provides that the rent is due on the first of the month. If not paid by the first, it is delinquent. Moreover, when the terms of the lease are considered as a whole, the provision that allows for a $100.00 discount if the rent is paid by the fifth of the month does not create ambiguity regarding the lessee's rent obligation.
By his own admission, Gambel did not make the online request to his bank to pay the April rent until the eleventh of April. Thus, Gambel was delinquent in his rental obligation. Accordingly, we find no error on the part of the trial court in granting the order of eviction against Gambel.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Pursuant to the lease, rent is due on the first of the month. Gambel admitted, however, that he paid the February and March rent "mid-month." He also admitted that the check for the March rent was returned for insufficient funds, but that the dishonored check was subsequently paid.
[2] Since the lodging of the appeal, FQR has filed a motion to dismiss Gamble's suspensive appeal because Gamble failed to deposit the monthly sum of $1,600.00 for the months of September, October and November to maintain the suspensive appeal. The failure to post a suspensive appeal bond as required by court order ordinarily converts the suspensive appeal to a devolutive appeal. In this case, due to the closing of the courts because of the devastating effects of Hurricane Katrina, it may well have been impossible for Gamble to pay each month the $1,600.00 into the registry of court to continue in effect his suspensive appeal bond. We note additionally that the lease between the parties expires on 31 December 2005. Therefore, we do not find that this court must rule upon whether the suspensive appeal should be dismissed as the issue is at this point essentially moot and because Gamble's appeal is at least now a devolutive appeal.