Judge Paula A. Brown
This matter involves the enforceability of the terms of a settlement agreement. Appellants, Steven A. Becnel ("Mr. Becnel") and Stratus Systems, Inc. ("Stratus"), appeal the district court's judgment granting the Motion to Enforce Settlement Agreement and Consent Judgment, and the Motion for Declaratory Relief filed on behalf of appellee, Michael L. Eckstein ("Mr. Eckstein"). For the reasons that follow, we affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
In 1992, Mr. Becnel and Mr. Eckstein formed Stratus to sell Mr. Becnel's safety inventions. Mr. Eckstein, an attorney, financed *1050 a portion of the endeavor and provided legal advice. Beginning in 1997, a dispute arose as to the percentage of Mr. Eckstein's ownership interest, fees Mr. Eckstein claimed he was owed for legal work, and whether Mr. Eckstein had breached any fiduciary and ethical duties owed to Stratus. Both parties filed suit. In August 2005, Mr. Becnel, Stratus, and Mr. Eckstein signed a Settlement Agreement, a License Agreement, a Product Transfer Agreement, and a Consent Judgment (collectively, the "Agreement"). In part, the Agreement: (1) transferred the rights to the "Halkey-Roberts Inflator"[1] and the exclusive license of all non-military sales of the "Universal Inflator"[2] to Mr. Eckstein; and (2) gave Stratus exclusive rights to all military applications of the Universal Inflator. Moreover, the Agreement required Stratus to pay Mr. Eckstein eight percent of the Total Gross Revenue Receipts ("TGRRs") of the Universal Inflator for a ten-year period, beginning on the date on which the first sale was made. It also gave Mr. Eckstein the right to audit Stratus' records in the event he reasonably believed TGRRs reported on Stratus' federal tax returns are inaccurate.[3] In February 2016, Mr. Eckstein filed a Motion to Enforce Settlement Agreement and Consent Judgment ("Motion to Enforce"), complaining that Mr. Becnel and Stratus (hereinafter, collectively, "Stratus") had violated the terms of the Agreement over the ensuing years. He requested that Stratus: (1) submit to an audit and pay the associated costs; (2) provide all current design and patent information-also known as "deliverables"-related to products that Eckstein owns and is entitled to sell;[4] (3) cease and desist sales in the non-military *1051 market; (4) reimburse Mr. Eckstein for any non-military sales; and (5) pay attorney's fees associated with filing the Motion to Enforce. Mr. Eckstein alleged that his review showed Stratus' TGRRs "numbers didn't add up" and Stratus' internal audit had revealed errors which resulted in additional royalty payments of over $100,000.00. He represented that, in violation of the Agreement, Stratus had refused to supply him with updated versions of the Universal Inflator and the Halkey-Roberts Inflator. Mr. Eckstein also requested that Stratus be ordered to produce records of any non-military sales premised on his contention that Stratus had violated the Agreement by selling the Universal Inflator to non-military customers.
In opposition, Stratus maintained that Mr. Eckstein filed the Motion to Enforce solely because the royalty payments he was owed stemming from the date of the first sale of the Universal Inflator were scheduled to expire in February 2017. Stratus argued that Mr. Eckstein was not entitled to any records of non-military sales because Mr. Eckstein had offered no proof that Stratus had made any such sales. Specifically, Stratus maintained that the only identifiable non-military customer, Switlik Parachute Company ("Switlik"), had bought the Universal Inflator for military applications, which Stratus argued was allowed by the Agreement. Stratus added that the Agreement's terms prohibited the assessment of any personal liability against Mr. Becnel.
As to Mr. Eckstein's demand for an audit, Stratus alleged that the dispute was resolved when Mr. Eckstein consented to and accepted payment as a result of the internal Stratus audit completed in the years 2011 through 2012. As such, Mr. Eckstein was only entitled to an audit for 2014-at his own expense. Stratus further maintained it had already complied with Mr. Eckstein's demands for deliverables. In conclusion, Stratus requested a declaration that the Universal Inflator royalties owed to Mr. Eckstein should terminate on February 1, 2017-the date it alleged was the tenth year after the first sale of the Universal Inflator to the United States Navy (the "Navy") for $84,649.58.
The district court heard argument on the Motion to Enforce on September 23, 2016. At the conclusion of the hearing, the district court orally granted Mr. Eckstein's audit request, with payment for the audit to take place in accordance with the Agreement. The district court ordered Stratus to produce, for an in camera inspection, documentation of all sales to any non-military customers of the Universal Inflator and Halkey Roberts Inflator. The district court also instructed Stratus to *1052 provide the deliverables-even if they had previously been provided as Stratus claimed-and requested a written judgment that reflected its orders.
On February 13, 2017, before a written judgment was signed, Mr. Eckstein filed a motion for declaratory relief, which the district court heard on May 19, 2017. In this motion, Mr. Eckstein asserted that he was entitled to royalties through January 28, 2022, as the first sale date for the Universal Inflator was January 28, 2012-not February 1, 2007, as claimed by Stratus. Mr. Eckstein argued that the $84,649.58 payment the Navy made to Stratus on February 1, 2007, was not for an actual sale of the Universal Inflator units; instead, the payment was only a reimbursement of Stratus' expenses. Mr. Eckstein contended the military requires a product to successfully complete its qualification testing program before the product is approved for sale; and in exchange, the military pays the costs the proposed seller incurs in developing the product for qualification testing. Thus, the Navy's February 1, 2007 payment was a standard reimbursement for Stratus' qualification testing development costs. Mr. Eckstein further argued that the Universal Inflator passed the military's qualification testing on December 30, 2011, and Stratus' first sale of the qualified Universal Inflator to the military market did not occur until January 28, 2012. Consequently, Mr. Eckstein argues he is owed royalty payments until 2022.
Stratus countered that the February 1, 2007 payment meets the legal definition of a sale and Mr. Eckstein should be precluded from contesting that date as the first sale date because he received royalty payments from that transaction. Stratus conceded, however, that no other "sales" were made between 2007 and 2011. While Stratus acknowledged that it did not receive official written notification that the Universal Inflator had successfully completed the Navy's testing program until December 30, 2011, it argued the Navy verbally qualified the Universal Inflator for sale in 2010. After receiving verbal qualification, Stratus maintained it made seven sales of the qualified, producible units in 2011, commencing on January 31, 2011.
Finally, Stratus reiterated that Mr. Becnel should be relieved from all personal exposure arising out of the Agreement's enforcement as the Agreement itself expressly releases him from liability; and, Mr. Eckstein agreed that the relief sought pertained only to Stratus, not to any personal liability on the part of Mr. Becnel.
At the conclusion of the hearing, the district court orally reasoned on the record that its interpretation of the "royalties" clause showed that actual sales of the Universal Inflator began in 2011, when the first seven sales of the certified units were made. The district court also found that Mr. Becnel had no personal liability for the royalty payments. The parties consented to have one judgment to reflect the district court's rulings from both the September 23, 2016 and the May 19, 2017 hearings.
On July 20, 2017, the district court rendered written judgment in favor of Mr. Eckstein and ordered that: (1) the parties evenly share the initial costs of the audit for the years 2008 through 2016, with reimbursement to be paid to the prevailing party pursuant to the Agreement; (2) Stratus provide the district court with an in camera inspection of all Universal Inflator documents regarding sales to non-military customers; and (3) Stratus give Mr. Eckstein certain items for the updated versions of the Universal Inflator. The district court further found that Stratus-not Mr. Becnel personally-owes royalties to Mr. Eckstein through March 14, 2021, and any personal liability of Mr. Becnel is governed by Louisiana statutory law and the terms *1053 of the Agreement, which was not before the Court at the present time.
From this judgment, this appeal followed.
DISCUSSION
Stratus alleges the following assignments of error:
1) The district court erred in ruling that the royalties owed to Mr. Eckstein on sales of the Universal Inflator continue until March 14, 2021, instead of February 1, 2017.
2) The district court erred in requiring that Stratus provide Mr. Eckstein with new sample units of the Universal Inflator and new data packages and drawings.
3) The district court erred in ruling that Mr. Eckstein is entitled to an audit for the years 2008, 2009, 2011-2013, and 2016.
4) The district court erred in ruling that Stratus must advance one-half of the costs for an audit, rather than concluding that Mr. Eckstein must advance the audit costs subject to reimbursement if the results are in his favor.
5) The district court erred in ruling that Stratus must provide the court with documentation of sales of the Universal Inflator to customers other than the U.S. Military.
6) The district court erred in refusing to declare that Mr. Becnel is not personally liable under the Settlement Agreement; and
7) The district court erred in not awarding attorney's fees, expenses, and costs to Stratus and Mr. Becnel.
The standard of review of a motion to enforce settlement is the manifest error/clearly wrong standard. Reed v. 7631 Burthe Street, LLC , 2017-0476, p. 10 (La. App. 4 Cir. 12/28/17), 234 So.3d 1201, 1208. A district court's judgment regarding the existence, validity and scope of a compromise or settlement agreement hinges on its finding of the parties' intent-an inherently factual finding. Id.
A dispute arising out of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review. See Orleans Parish School Board v. City of New Orleans , 1996-2664, p. 4 (La. App. 4 Cir. 9/3/97), 700 So.2d 870, 873. However, "[i]n the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." French Quarter Realty v. Gambel , 2005-0933, p. 3 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1028 (quoting Grabert v. Greco , 1995-1781, p. 4 (La. App. 4 Cir. 2/29/96), 670 So.2d 571, 573 ) ). In applying the manifest error review standard to the district court's interpretation of the contract, the appellate court may not substitute its own view of the evidence for the district court's view or disturb the district court's fact findings so long as its findings are reasonable. Gambel , 2005-0933, p. 3, 921 So.2d at 1028.
The scope of appellate review in a declaratory judgment is whether or not the district court abused its discretion in granting or denying relief. See Delta Administrative Services, L.L.C. v. Limousine Livery, Ltd. , 2015-0110, p. 6 (La. App. 4 Cir. 6/17/15), 216 So.3d 906, 910. We now apply these precepts to Stratus' assignments of error.
Royalty Payments/Sale of Universal Inflator
Stratus contends the district court erred in its finding that the royalties owed to Mr. Eckstein on sales of the Universal Inflator terminates on March 14, 2021, rather than February 1, 2017.
Section 3 of the Settlement Agreement states, in part:
3. Royalty Payments . Stratus System will pay Eckstein a royalty as follows:
*1054 * * *
c. For a ten year period beginning on the date on which the first sale of the Universal Inflator Product is made, Stratus Systems will pay Eckstein eight percent (8%) of the Total Gross Revenue Receipts, as defined in this Agreement, and as confirmed on the federal tax returns of Stratus Systems and of any entity and/or individual resulting from the Universal Inflator, which is presently in development. The payments due under this Section 3.b., if any, shall be payable to Eckstein in equal quarterly installments paid quarterly on April 30, July 31st, October 31st and January 31st of each year during the royalty period....
The parties do not dispute the language of the Agreement unambiguously provides that royalty payments are owed to Mr. Eckstein for ten years after the date of the first sale, but rather, they dispute the transaction which marked the first sale of the Universal Inflator to the military.
Stratus relies on La. C.C. art. 2439[5] to support its position that the first sale was perfected on February 1, 2007, arguing that ownership of the qualifying Universal Inflators units was transferred to the Navy upon its payment of $84,649.58. Stratus also points out that Mr. Eckstein demanded and received a royalty payment from this transaction and referenced the transaction as a "sale" in his correspondence with Stratus.
Mr. Eckstein, on the other hand, characterizes the February 1, 2007 payment as no more than reimbursement costs for qualification testing units. He urges his use of the "sale" terminology in his correspondence to Stratus was not dispositive as to when actual sales of the Universal Inflator began for purposes of triggering the royalty clause. Mr. Eckstein argues that he was "out-of-the loop" and used the "sale" term in response to the February 1, 2007 payment only because the transaction appeared on a generic Stratus sales report. Mr. Eckstein cites to Mr. Becnel's deposition testimony as conclusive evidence that the military could not have purchased any producible units of the Universal Inflator. Mr. Becnel testified that Stratus could not sell a producible unit of the Universal Inflator to the military until it passed qualification testing, and the $84,649.58 payment represented Stratus' costs to build the Universal Inflator qualification testing units. Additionally, Mr. Eckstein argues that Section 8 of the Settlement Agreement-which gives him the "Exclusive License For All Non-Military Sales of Universal Inflator"[6] -and Section 5 of the License Agreement,[7] read conjointly with *1055 Section 3b of the Settlement Agreement, show the Universal Inflator was a product in development. As such, the royalties from sales could not begin until it passed qualification testing. Thus, Mr. Eckstein argues that the first sales of the completed Universal Inflator to the military market started in 2011, after the military notified Stratus that the product had successfully completed qualification testing.
La. C.C. art. 2045 provides the "[i]nterpretation of a contract is the determination of the common intent of the parties." To determine the parties' intent, courts must first look to the words and provisions of the contract. Amend v. McCabe , 1995-0316, p. 7 (La. 12/1/95), 664 So.2d 1183, 1187. In its reasons for judgment, the district court concluded that the February 1, 2007 payment of $84,649.58 represented reimbursement costs for a prototype of the Universal Inflator and not payment for producible units, espousing, "[t]hat was a prototype of it in 2007, and I deem that to be a reimbursement of the costs." The district court noted that after the February 1, 2007 costs payment, no sales of the Universal Inflator to the military took place until Stratus successfully completed qualification testing in 2011, at which time seven sales were made.[8] Thus, the district court interpreted Section 3b of the Settlement Agreement to mean the first sale of the Universal Inflator to the military for purposes of triggering royalty payments began after the product was qualified for sale to military and non-military markets.
Employing the manifest error standard, we find that the district court's factual determinations that the February 1, 2007 payment was a reimbursement for a prototype and the actual first date of Universal Inflator sales to the military was in 2011 are supported by the record. Mr. Becnel's deposition testimony establishes that the government essentially reimbursed Stratus $84,649.58-the cost set by Stratus to build the prototype test units. Mr. Becnel's testimony also verifies that the Universal Inflator underwent numerous revisions; it failed several items on the military's test schedule; it was re-engineered and sent back; the Universal Inflator could not be placed on the government's Qualified Bidders List ("QBL") for possible purchase until it satisfied all of the qualification test requirements; and that sales of the qualified Universal Inflator to the Navy started in January 2011-after Stratus received notice it had completed the qualification test requirements.
Where factual findings are pertinent to the interpretation of a contract, appellate courts cannot disturb those factual findings in the absence of manifest error. New Orleans Jazz and Heritage Found. v. Kirksey , 2009-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401. Based on the above findings, a reasonable basis exists for the district court's factual conclusion that the "first sale" of the completed Universal Inflator to the military took place in 2011, rather than 2007. Accordingly, as the district court's finding *1056 that the royalties owed by Stratus to Mr. Eckstein on military sales of the Universal Inflator extends until 2021 is not manifestly erroneous or an abuse of the district court's discretion, this assignment of error lacks merit.
Deliverables
Stratus maintains the district court erred in ordering it to provide Mr. Eckstein with updated deliverables because the License Agreement only required it to make a one-time delivery-which it had previously made on November 2, 2005. Stratus represents that it provided some additional information on the inflators. It claims, however, that it voluntarily did so because of Mr. Eckstein's lack of technical and engineering expertise, not because it was required by the License Agreement. Contrariwise, Mr. Eckstein insists that the terms of the License Agreement require Stratus to provide him with updated deliverables.
The parties agree that Section 1(c) and Section 2 of the Licensing Agreement apply to the deliverables dispute. As discussed, supra , Section 1(c) defines "Universal Inflator" as including all present and future versions of the product; and Section 2 requires Stratus to transfer certain deliverables pertinent to the Universal Inflator to Mr. Eckstein for his full use during the license term.
It is well settled law that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. In the present matter, the district court clearly interpreted Section 1(c) and Section 2 as requiring Stratus to transfer and deliver to Mr. Eckstein certain designated deliverables to enable Mr. Eckstein to meaningfully exercise full use of his license to manufacture and sell to the non-military market. Accordingly, we find the district court was not manifestly erroneous in enforcing the Agreement by ordering Stratus to produce the updated deliverables.
Audit
Stratus raises two assignments of error concerning the court-ordered audit: (1) the district court erred in ruling that Mr. Eckstein is entitled to an audit for the years 2008, 2009, 2011-2013, and 2016; and (2) the district court erred in ruling that Stratus must advance one-half of the costs for an audit, rather than concluding that Mr. Eckstein must advance the audit costs, subject to reimbursement if the results are in his favor.
Audit Years
In the first prong of this argument, Stratus contends the district court should not have granted an audit for years 2008-2009 and 2016 as Mr. Eckstein did not seek an audit for those years in his Motion to Enforce or at the hearing.[9] Mr. Eckstein posits that Section 3c of the Settlement Agreement delineates his right to an audit. In support, Mr. Eckstein contends that written letters from Stratus acknowledged his right to an independent audit; Stratus' TGRRs did not match his receipts; and the reimbursement payments he received as a result of Stratus' internal audit confirms the discrepancies in Stratus' TGRRs.
La. C.C.P. art. 862 provides in part that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." The district court has the discretion to grant relief not *1057 requested with great specificity or extensively pled. See LeBleu v. Safeway Ins. Co., of Louisiana , 2001-1637, p. 4 (La. App. 3 Cir. 5/22/02), 824 So.2d 422,425. Notwithstanding, Article 862 does not confer jurisdiction for the district court to decide issues which the litigants have not raised. See Dupree v. Dupree , 41,572, p. 11 (La. App. 2 Cir. 12/20/06), 948 So.2d 254, 260. Upon review, the parties clearly raised and addressed the issue of Mr. Eckstein's entitlement to an audit in their pleadings and argument. The relief granted by the district court aligns with the facts pled in the Motion to Enforce and arguments raised at the hearing. Consequently, the district court did not abuse its discretion in ordering an audit for years not specifically pled in the Motion to Enforce.
In the second prong of this argument, Stratus maintains Mr. Eckstein is not entitled to an audit for 2011-2013, the years covered by its internal audit. Stratus admits its internal audit resulted in an additional royalty payment of $98,025.99, plus interest, to Mr. Eckstein. Stratus claims, however, that Mr. Eckstein agreed to a compromise, pursuant to La. C.C. art. 3071, to settle the 2011-2013 royalty payment dispute when he accepted the additional payment.[10] Accordingly, it argues that Mr. Eckstein is precluded from an audit for those years.
"A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached." See Feingerts v. State Farm Mut. Auto. Ins. Co. , 2012-1598, 2013-0023, p. 11 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1301. The formalities of a compromise require that it be placed in writing or recited in open court. See La. C.C. art. 3072.[11] Here, Mr. Eckstein disputes that any agreement was reached and contests that his negotiation of the royalty payment check quashed his right to an audit. He reiterates that Stratus' TGRRs contained many discrepancies, additional royalties are still owed from 2011-2013 and other years, and the Agreement places no limitations on the amount of years for which an audit could be requested.
The record evidence fails to show a written agreement or a recitation, in open court, that a compromise had been effectuated to settle the audit dispute for 2011-2013. The underlying Agreement gives Mr. Eckstein the right to an independent audit based upon a reasonable belief of inaccurate TGGRs submitted by Stratus. Stratus' admission that its 2011-2013 internal audit revealed inaccuracies provided the district court with sufficient facts upon which to grant Mr. Eckstein's demand for an independent audit. Based on the above, it is reasonable to conclude that there was no meeting of the minds between Stratus and Mr. Eckstein. Accordingly, the district court's order of an audit inclusive of the years 2011-2013 was not manifestly erroneous.
Audit Costs
Stratus contends the district court erred in requiring Stratus to advance half of the audit costs because the Agreement only calls for it to pay costs if the reported TGGRs reveal a discrepancy of four percent.[12] Our scrutiny of Section 3c of the *1058 Settlement Agreement shows its terms are silent as to which party is required to provide the upfront costs to fund the audit. The Settlement Agreement imposes the obligation to bear costs after the audit results are obtained. It specifies that Stratus is to bear the costs in the event the audit shows the TGRRs discrepancies are greater than four percent and that Mr. Eckstein bears the costs if the discrepancies are less than four percent. Therefore, the district court's judgment requiring the parties to evenly share the costs of the audit and requiring reimbursement to the prevailing party after the audit results are obtained is in accord with the Agreement. Accordingly, we find no manifest error in the district court's decision to order the parties to equally share the initial costs of the audit.
In Camera Inspection
This alleged error involves the exclusive right the License Agreement gives Mr. Eckstein to market the Universal Inflator to non-military customers for non-military applications. Stratus claims its sale to Switlik-a non-military customer-for military applications did not violate the Agreement. As such, it argues the district court should not have ordered it to produce, for an in camera inspection, documentation of all Universal Inflator sales to non-military customers since Mr. Eckstein failed to prove Stratus had made any sales for non-military applications. We note that although Mr. Eckstein's Motion to Enforce prayed for a cease and desist order to prohibit Stratus from selling Universal Inflators to the military market, at the hearing, Mr. Eckstein requested the following relief regarding Stratus' possible violation of his exclusive license to the non-military market:
But if you sold to somebody who is not a military customer, tell this Court who it is, when you sold it to them, for how much[.] [W]e will go do discovery on that, Your Honor, and we'll come back and say do we think they violated and what do we do about it.
We agree with Stratus that Mr. Eckstein, as the mover, would have the burden of proof to establish his entitlement to a cease and desist order. However, Mr. Eckstein's request for Stratus to produce records of its non-military sales is no more than a method of discovery for production of documents as allowed by La. C.C.P. art. 1421.[13] "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery...." See La. C.C.P. art. 1422. Established Louisiana jurisprudence gives the district court broad discretion in handling discovery matters. Connick v. Brechtel , 1998-0543, p. 7 (La. App. 4 Cir. 4/22/98), 713 So.2d 583, 587. Here, considering that Stratus admits it has made Universal Inflator sales to at least one non-military customer, compelling it to produce sale records to other non-military customers is clearly relevant to Mr. Eckstein's *1059 claims that Stratus may have violated the Agreement. Moreover, it is determinative of his entitlement to a cease and desist order. Thus, we find the district court did not abuse its discretion in ordering the in camera inspection.
Mr. Becnel's Personal Liability
Stratus contends the district court erred in not expressly declaring that Section 31 of the Settlement Agreement precludes Mr. Becnel from any personal liability.[14] Mr. Eckstein emphasizes that although he named Mr. Becnel as a defendant in his Motion to Enforce, he conceded in his motion for declaratory relief and at the hearing that the issue of Mr. Becnel's personal liability was not germane to the issues pending before the district court. He maintains that the remedies he sought and obtained were from Stratus-not Mr. Becnel personally.
In general, appellate courts will not consider issues raised for the first time on appeal which the district court has not addressed. Billieson v. City of New of New Orleans , 2009-0410, p. 8 (La. App. 4 Cir. 11/12/09), 26 So.3d 796, 801. "Appellate courts must disregard all arguments and assignments of error that relate to an issue not raised for consideration before the court below." Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.v. Cheramie , 2010-0588, p. 3 (La. App. 4 Cir. 9/29/10), 49 So.3d 457, 459.
In the case sub judice , the judgment states that Stratus-not Mr. Becnel-is liable for the additional royalty payments. The broader issue of Mr. Becnel's personal liability for any action brought pursuant to the Agreement was not considered by the district court as it was not a part of the relief sought by Mr. Eckstein. Although the judgment provided that any personal liability of Mr. Becnel is governed by Louisiana statutory law and the Agreement, the judgment specifically found that Mr. Becnel's personal liability "is not before the Court at this time." Hence, this Court shall disregard this assignment of error.
Attorney's Fees
Stratus' final assignment of error argues the district court erred in not awarding it attorney's fees, expenses and costs. Stratus argues it is entitled to these remedies pursuant to Section 25 of the Agreement should this Court reverse the district court's judgment.[15] However, this Court finds no manifest error in the judgment of the district court. Stratus is not the prevailing party in this dispute. Consequently, this assignment of error is without merit.[16]
*1060 CONCLUSION
Based on the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED

Section 1.b. of the Settlement Agreement defines the term "Halkey-Roberts Product" as follows:
The term "Halkey-Roberts Product" as referred to in these agreements shall mean the Halkey-Roberts Inflator device created by Stratus Systems, as described in more detail in Exhibit A to the Halkey-Roberts Product Transfer Agreement attached hereto.

Section 1.c. of the Settlement Agreement defines the term "Universal Inflator" as follows:
"Universal Inflator" shall mean the Universal Inflator (FLU-8/9). This will consist jointly of two versions of this inflator, one designed for "Civilian application" (hereinafter referred to as the "Civilian Inflator") and the other designed for "Military application" (hereinafter referred to as the "Military Inflator"). The term "Universal Inflator," "Civilian Inflator" and "Military Inflator" shall also include all presently existing versions of those products and all future versions of those products, including the proprietary processes, proprietary technical and other information, and intellectual property rights relating thereto, whether or not patentable under the patent laws of the United States or any foreign country.

Section 3.c. of the Settlement Agreement provides:
In the event Eckstein has a reasonable basis to believe the Total Gross Revenue Receipts reported on the federal tax returns of Stratus Systems are inaccurate, Eckstein has the right to audit the Stratus Systems' records with an independent CPA from a Big 4 or 6 accounting firm approved by all parties. If a discrepancy of more than four (4%) is found, the fees, costs and expenses of the independent accountant and any reasonably hourly cost incurred by Stratus Systems shall be borne by Stratus Systems. If a discrepancy of less than four (4%) underpayment is found, the fees, costs and expenses by the independent accountant shall be borne by Eckstein.

Section 2 of the License Agreement states:
Items Stratus Systems Will Provide. Stratus Systems and Steven Becnel ("Becnel") will transfer and deliver to Eckstein for his full use during this license , the following items related to the Universal Inflator, which will be delivered to Eckstein within thirty (30) days after the execution of the this license: (emphasis added).
(i) A Level II Data/Print package (as defined in the DOD Standard-100 Rev. C) for the Universal Inflator that is complete, correct and corresponds to the working samples of Universal Inflator to be provided, and is consistent with the standard documentation provided by Stratus to others;
(ii) A Bill of Materials for the Universal Inflator that is complete, correct and corresponds to the working samples of the Universal Inflator to be provided, and is consistent with the standard documentation provided by Stratus Systems to others;
(iii) All information requested by Licensee that is reasonably necessary to complete any patent application and to protect and maintain the intellectual property rights of the Civilian Inflator;
(iv) All technical drawings for the Universal Inflator that are complete, correct and correspond to the working samples of the Universal Inflator to be provided, and are consistent with the standard documentation provided by Status Systems to others; and
(v) Ten (10) sample units of the Civilian Inflator and ten (10) sample units of the Military Inflator, all working and functioning as represented in the Stratus Systems brochure.

La. C.C. art. 2439 provides that a "[s]ale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale."

Section 8 of the Settlement Agreement states:
The Stratus Systems Parties transfer to Eckstein, and/or his designee, an exclusive fully-paid license to own and use all rights for the manufacture, development, use, protection and sale of the Universal Inflator, pursuant to the License Agreement, attached as Exhibit E, which is incorporated herein as if repeated in its entirety, provided that such exclusive rights shall be limited to non-military applications and Stratus Systems shall retain exclusive rights to all military applications. Stratus will represent and warrant that the Universal Inflator will be submitted to Eagle Picher for environmental qualification testing on or before June 30, 2006.

Section 5 of the License Agreement states in part:
5(a) The Universal Inflator will be submitted to Eagle Pitcher for environmental qualification testing on or before June 30, 2006. Licensor will make its best efforts to ensure that the Military Inflator will successfully complete the Qualification Test Plan agreed upon between Stratus Systems and the United States Military, and consents to Licensee using the same Qualification Test Plan for the Civilian Inflator, at Licensee's sole cost....
5(b) Licensor will complete the Universal Inflator, including both the Civilian Inflator and the Military Inflator, to the point they are working and functioning as represented in the Stratus Systems brochure. Licensor, however, makes no representation or warranty that the Military or Civilian Inflator will pass qualification testing.

Stratus admitted that the Navy verbally qualified the Universal Inflator for sale in late 2010 and offered invoices into evidence to show it made seven sales in 2011, starting on January 31, 2011.

The Motion to Enforce requested that Stratus submit to an audit for the years 2010, 2011, 2012, 2013, 2014, and 2015.

La. C.C. art. 3071 defines a compromise as follows: "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."

La. C.C. art. 3072 provides: "A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

Mr. Eckstein also argues that the district court erred in ordering him to pay half of the initial audit costs. He claims the four percent TGRRs' discrepancies established by Stratus' internal audit require Stratus to bear the audit costs. However, Mr. Eckstein did not file an answer to the appeal nor did he appeal the judgment. Therefore, this alleged error is not properly before this Court. See Kirby v. Poydras Center LLC. , 2015-0027, p. 13 (La. App. 4 Cir. 9/23/15), 176 So.3d 601, 608.

La. C.C.P. art. 1421 provides, in part, that "parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things..."

Section 31 of the Settlement Agreement provides, in part, that "[n]otwithstanding anything that might be interpreted to the contrary in this Agreement or its attachments, Becnel shall not be personally liable to the Eckstein Parties for any payment obligations or any other obligations[.]"

Section 25 of the Settlement Agreement provides:
25. Attorneys' Fees.
If any party institutes legal action to enforce or interpret the terms and conditions of this Agreement, the prevailing party shall be awarded reasonable attorneys' fees at all trial and appellate levels, and the expenses and costs incurred by such prevailing party in connection therewith.

Conversely, Mr. Eckstein also asks this Court to award attorney's fees, costs, and expenses pursuant to Section 25 of the Settlement Agreement because he successfully prevailed before the district court. However, as noted in footnote 12, this issue shall not be considered by this Court because Mr. Eckstein failed to appeal or file an answer to the appeal.