MICHAEL L. ECKSTEIN                  *        NO. 2022-CA-0782

VERSUS                               *

STRATUS SYSTEMS, INC.                *        COURT OF APPEAL
AND STEVEN A. BECNEL
                                     *        FOURTH CIRCUIT

                                     *        STATE OF LOUISIANA

                         * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2002-02069  C\W 2002-02253, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rachael D. Johnson, Judge
Karen K. Herman)


H. Minor Pipes, III
Patrick J. Lorio
PIPES MILES BECKMAN, L.L.C.
1100 Poydras Street
Suite 1800
New Orleans, LA 70163

          COUNSEL FOR PLAINTIFF/APPELLANT


Ashley L. Belleau
Tyler J. Arbour
Lorin R. Scott
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street
Suite 2775
New Orleans, LA 70130

          COUNSEL FOR DEFENDANT/APPELLEE


                                        **AFFIRMED**
                                    **JUNE 1, 2023**

*DLD*
*RDJ*
*KKH*

The facts giving rise to this case involve the formation of Stratus Systems, Inc. ("Stratus") by Michael Eckstein and Steven A. Becnel in 1992 and the subsequent deterioration of the business relationship between the two men. Mr. Eckstein and Mr. Becnel formed Stratus to sell Mr. Becnel's safety inventions. Mr. Eckstein, an attorney, financed a portion of the endeavor and provided legal advice. By early 2002, Mr. Eckstein and Mr. Becnel were on the verge of litigation between them.[1]

On February 6, 2002, Mr. Eckstein filed a petition for damages against Stratus, Mr. Becnel, and Stratus Oracle, Inc. ("the Stratus parties"), alleging claims for the recovery of "over $1,000,000.00" of loans, breaches of fiduciary duty, interest, attorneys' fees, costs of the proceeding, and general and equitable relief. On February 8, 2002, Stratus filed a petition for preliminary and permanent injunction and temporary restraining order, seeking a court order enjoining Mr. Eckstein's denial of Stratus's access to Stratus's records and property and Mr.

---

[1] For a more detailed factual background of the events giving rise to this case, one may wish to consult *Eckstein v. Becnel*, 2017-0868 (La. App. 4 Cir. 6/27/18), 250 So.3d 1046.

1

Eckstein's destruction, alteration, or modification of Stratus's records and property. Stratus alleged the discovery of "accounting irregularities," including "$1,000,000.00 in questionable charges, known discrepancies in the records maintained by [Mr. Eckstein], and various other acts of apparent self-dealing." These two actions were consolidated into civil action No. 2002-2069.

Ultimately, Mr. Eckstein and Stratus entered into a Settlement Agreement. On August 15, 2005, Mr. Eckstein and Stratus obtained a consent judgment, which provided that the Settlement Agreement and the terms thereof were executed pursuant to the settlement of the parties' respective claims, including Mr. Eckstein's claims for more than $1.1 million in alleged loans, breaches of fiduciary duty, interest, attorneys' fees, costs of the proceeding, and general and equitable relief, as well as Stratus's claims for Mr. Eckstein's alleged self-dealing and breach of fiduciary duty. The Settlement Agreement was intended "to resolve and finally settle all disputes between [Mr. Eckstein and Stratus], whether relating to the Lawsuits or otherwise." As part of the Settlement Agreement, Mr. Eckstein transferred his shares in Stratus to the Stratus parties.

Pursuant to the Settlement Agreement, Stratus agreed to make cash payments to Mr. Eckstein in the total principal amount of $865,000.00. Stratus further agreed to pay Mr. Eckstein royalty payments. The Settlement Agreement also required Stratus to pay Mr. Eckstein certain percentages of the total gross revenue receipts of "any products and/or technology developed by Stratus" for the years 2005-2014, and "resulting from the Universal Inflator" for a ten-year period,

beginning on the date on which the first sale was made. Stratus made payments totaling more than $3 million between 2011 and 2021 in return for mutual releases for the claims asserted by the parties.

Due to ongoing disputes over whether payments to Mr. Eckstein under the Settlement Agreement were royalties from Stratus, taxable as ordinary income, or payments purchasing Mr. Eckstein's stock in Stratus, taxable as capital gains, as well as other provisions of the Settlement Agreement, Mr. Eckstein, on November 21, 2019, filed a Motion to Enforce Settlement Agreement and Petition for Declaratory Relief as it relates to the 1099 Issue. A hearing on his motion took place on March 31, 2021. On September 28, 2022, the trial court granted in part and denied in part Mr. Eckstein's motion to enforce settlement agreement and petition for declaratory relief. The trial court ruled that the amount paid to Mr. Eckstein by the Stratus parties, up to the $865,000.00 amount established by the Stock Redemption Agreement, was for the sale of Mr. Eckstein's stocks. The trial court also ruled that any payments made to Mr. Eckstein in excess of the $865,000.00, (including: (a) the 6.5 percent of the total gross revenue resulting from any products or technology developed by defendant, Stratus, other than the Universal Inflator, for the years 2005 through 2014 and (b) the 8 percent of the total gross revenue resulting from the sales of the Universal Inflator for a ten year period beginning on the date on which the sale of the first Universal Inflator is made) are revenue and should thus be treated as taxable events. Finally, the trial court found that there was no just reason for delay and that this judgment should be

designated as a final judgment pursuant to articles 1911 and 1915(B) of the Louisiana Code of Civil Procedure. It is from this judgment that Mr. Eckstein now appeals.

On appeal, Mr. Eckstein raises two assignments of error: (1) the trial court erred in ruling that all payments made by Stratus to Mr. Eckstein, other than the $865,000.00 cash payments are "revenue" payments rather than contingent earn out payments in exchange for Mr. Eckstein's stock in Stratus; and (2) the trial court erred in not awarding Mr. Eckstein reasonable attorneys' fees, costs, and expenses incurred in bringing his motion.

"The standard of review of a motion to enforce settlement is the manifest error/clearly wrong standard." *Eckstein v. Becnel*, 17-0868, p. 8 (La. App. 4 Cir. 6/27/18), 250 So.3d 1046, 1053. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." *French Quarter Realty v. Gambel*, 05-0933, p. 3 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1027-28 (*quoting Grabert v. Greco*, 95-1781, p. 4 (La. App. 4 Cir. 2/29/96), 670 So.2d 571, 573). "A district court's 'interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review.' 'This is because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding.'" *Feingerts v. State Farm Auto. Mut. Ins. Co.*, 12-1598, p. 4 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1297 *citing Hancock Bank of La. v. Holmes*, 09-1094, p. 6 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134; *also citing Rosell v. ESCO*, 549 So.2d 840 (La. 1989). Furthermore,

4

we use the manifest error standard in reviewing judgments granting motions to enforce settlements. *See Sileo v. Berger*, 11-0295, p. 8 (La. App. 4 Cir. 9/28/11), 74 So.3d 753, 758. The manifest error/clearly wrong standard "requires that this Court review the record in its entirety, not to determine whether the trial court's findings are wrong, but whether they find reasonable support in the record, even though the reviewing court is convinced that its interpretation is more reasonable." *Succession of Kirschman*, 19-1101, p. 5 (La. App. 4 Cir. 7/1/20), 302 So.3d 552, 556 (*quoting Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La. 1993). "In applying the manifest error review standard to the district court's interpretation of the contract, the appellate court may not substitute its own view of the evidence for the district court's view or disturb the district court's fact findings so long as its findings are reasonable." *Eckstein*, 17-0686, p. 9, 250 So.3d at 1053 (*quoting Gambel*, 05-0933, p. 3, 921 So.2d at 1028.

As stated above, the trial court granted in part and denied in part the motion to enforce settlement agreement. The trial court ruled that "the amount paid to Eckstein by Stratus, was for the sale of Mr. Eckstein's stocks" and "any payments made to Mr. Eckstein in excess of the $865,000.00 . . . were revenue and should be treated as a taxable event." The trial court stated at a March 31, 2022 hearing that "[i]t's not the province of this Court to issue tax opinions, and I'm certainly not in that business." The trial court recognized that it was not for it to determine the specific tax treatment of the "Royalty Payments." In essence, Stratus made payments to Mr. Eckstein in a certain manner, and the trial court determined that

5

this manner was acceptable in terms of the Settlement Agreement between the parties and that it was not in the trial court's purview to see that payments were made in such a way as to reduce the tax liability of one of the parties.

As reflected by the parties' expression of their intentions, the purpose of the Settlement Agreement was to settle all the legal disputes between them. "When the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that situation alone." La. C.C. art. 2052. "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. C.C. art. 3076. "Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication." *Ortego v. State, Dep't of Transp. & Dev.*, 96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363 (*citing* La. C.C. art. 3073). Based on the record before it, the trial court's ruling that "any payments made to Mr. Eckstein in excess of the $865,000.00 . . . were revenue and should be treated as a taxable event" was reasonable. Accordingly, the trial court's judgment concerning this issue was neither clearly wrong, nor was it manifestly erroneous.

In his second assignment of error, Mr. Eckstein claims that the trial court erred in not awarding him reasonable attorneys' fees, costs, and expenses incurred in bringing his motion to enforce in that he was partially successful. The trial court did not deny Mr. Eckstein's claim for attorneys' fees, costs or expenses; the trial

6

court has not even ruled on that issue. Both Mr. Eckstein and Stratus have motions for attorneys' fees, costs and expenses pending before the trial court. Accordingly, the trial court specifically stated that it would defer ruling on Mr. Eckstein's claim and "reschedule that" and talk money "all at one time." In response to the trial court's position, Mr. Eckstein's attorney replied: "That's fine your Honor." Therefore, through his attorney, Mr. Eckstein acquiesced in the trial court's decision to defer ruling on this issue. As the trial court has never ruled on the issue of attorneys' fees, costs, or expenses, this issue is premature and not ripe for appeal. Accordingly, we find no error on the part of the trial court in not awarding attorneys' fees, costs or expenses.

Based on the record before this Court and for the above and foregoing reasons, we affirm the trial court's judgment.

**AFFIRMED**